IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| EMMANUEL E. SEWELL | * | |
| Plaintiff | * | |
| v | * | Civil Action No. DKC-11-1584 |
| ACTING COMMISSIONER J. MICHAEL STOUFFER, *et al.* | * | |
| | * | |
| Defendants | | |

\*\*\*

## MEMORANDUM OPINION

Defendants filed a Motion to Dismiss or for Summary Judgment in the above-entitled case. ECF No. 24. Plaintiff Emmanuel Sewell ("Sewell") opposes the motion and moves for injunctive relief. ECF No. 28 and 31. Upon review of the papers filed, the court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2011).

### Background

Sewell asserts a variety of claims in this action. First, on December 7, 2010, he filed a second administrative remedy procedure form (ARP) complaining that his legal mail was being opened and willfully and maliciously discarded by prison staff in Unit One, D-Tier at North Branch Correctional Institution (NBCI). ECF No. 2. He further claims that Lt. Durst, Sgt. Bulger and Sgt. McKenzie failed to provide Sewell with written "matter of records" concerning his mail. Sewell states that his "domestic mailings" were being arbitrarily put into the cells of prison gang members to get Sewell to focus his anger on "gang bangers" instead of officers.[1]

---

[1] To the extent that Sewell presents claims in the context of this case that have been presented in a previously filed complaint, those claims will not be addressed here. *See Sewell v. Stouffer*, Civil Action No. DKC-11-614 (D. Md.).

Sewell also states his access to the law library was cut off when he was no longer receiving case-law or "updated law changes for a liberal pleading concerning the SMU[2] operations." *Id*. at p. 3. He states library services were only provided every two to three weeks and his request slips were being re-written in someone else's handwriting. He states the librarian was erroneously faxing the wrong information to LASI[3] and changing his initial case law requests or simply refusing to process certain requests. Sewell states that these practices violate his constitutional rights and continued regardless of the number of times he contacted the warden and the librarian. Sewell claims that as a result of being denied legal mail and access to legal materials his case was dismissed. *Id*. [4]

With respect to Sewell's claims regarding interference with his legal mail, Defendants assert that all incoming and outgoing mail at NBCI is handled pursuant to directives. Legal mail is logged in and forwarded to the recipient's housing unit. The log book, maintained by NBCI staff, contains inmates' names and signatures showing when they received legal mail. ECF No. 24 at Ex. 16. From June 30, 2010 through October 5, 2011, Sewell's name and signature appears sixty-five times. *Id*. at pp. 1 – 66. Defendants further deny engaging in conduct to deprive Sewell of his legal mail or having other inmates forge his signature on legal mail log sheets. *Id*. at Ex. 9, 14, 17, 18, 19 and 20.

As an inmate assigned to segregated housing, Sewell's means of access to legal materials requires him to submit a written request which is forwarded to the librarian. ECF No. 24 at Ex.

---

[2] SMU is the Special Management Unit at NBCI.

[3] LASI is an acronym for Library Assistance to State Institutions which is a service that provides copies of cited legal cases to inmates confined to state institutions. ECF No. 24 at Ex. 22.

[4] Sewell also alleges his safety was endangered through poisoning of his food with salmonella and sharp objects embedded in crevices of the fish he was being served. Based on these alleged unsafe conditions, Sewell claims he had to dismiss an appeal pending in the Fourth Circuit Court of Appeals. ECF No. 2 at p. 2. This claim was addressed in *Sewell v. Stouffer*, Civil Action DKC-11-0614 (D. Md.) at ECF No. 74 and 75 (Memorandum Opinion and Order granting summary judgment in favor of Defendants).

22. Specifically, copies of case law are requested through the use of a LASI form which is then mailed to LASI for completion of the request. If a particular case requested is one that is frequently requested, the Librarian, Mary Huebener, crosses the request off the LASI form and instead provides the case to the inmate from a Legal Information Packet (LIP) provided to her by LASI. At that time, the case is sent to the inmate requesting the case. In Sewell's case, he requested three cases over the past three years and Ms. Huebner followed the procedure to provide cases to him. *Id*. at pp 2 – 5. Defendants deny otherwise improperly denying Sewell access to the library or legal materials. *Id*. at Ex. 2, 9, and 22.

Additional claims were added during the pendency of this proceeding focusing on safety issues. Those claims will be described later.

## Standard of Review

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The

court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Analysis**

Injunctive Relief

A preliminary injunction is an extraordinary and drastic remedy. *See Munaf v. Geren*, 553 U.S. 674, 689-90 (2008). To obtain a preliminary injunction, a movant must demonstrate: 1) that he is likely to succeed on the merits; 2) that he is likely to suffer irreparable harm in the absence of preliminary relief; 3) that the balance of equities tips in his favor; and 4) that an injunction is in the public interest. *See Winter v. Natural Resources Defense Council, Inc*, 555 U.S. 7, 129 S.Ct. 365, 374 (2008); *The Real Truth About Obama, Inc. v. Federal Election Commission*, 575 F.3d 342, 346 (4th Cir. 2009), vacated on other grounds, _U.S. _, 130 S.Ct. 2371, 176 (2010), reinstated in relevant part on remand, 607 F.3d 355 (4th Cir. 2010) (per curiam).

While this case was pending, Sewell filed Motions for Preliminary Injunction. ECF No. 14, 15, and 31. In the first two motions Sewell simply restates the claims raised in the Complaint with the exception of the allegation that weapons were being passed on D Tier in an effort to have Sewell killed. ECF No. 14. Sewell also claimed he should be evaluated at Patuxent Institution for psychological, health, and safety reasons. ECF No. 15 at Attachment 1,

p. 4. He also claimed the Division of Correction "must be monitored due to multiple failures to provide inmates constitutional protection to meaningful pre-deprivation opportunities to be heard with a thorough accurate investigations (sic) in a discretionary meaningful way, without specific intents to commit unlawful acts." *Id*. at Attachment 2, p. 4.  Counsel was directed to include a response to this allegation when responding to the Complaint. ECF No. 17.  In the most recent motion, Sewell again alleges that he is being denied access to his mail and cites as evidence his failure to receive Orders from this court granting his requests for injunctive relief. ECF No. 31.

<u>Failure to Protect</u>

In order to prevail on an Eighth Amendment claim of failure to protect from violence, Sewell must establish that Defendants exhibited deliberate or callous indifference to a specific known risk of harm. *See Pressly v. Hutto*, 816 F. 2d 977, 979 (4th Cir. 1987). "Prison conditions may be restrictive and even harsh, but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective, any more than it squares with evolving standards of decency.  Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer v. Brennan*, 511 U.S. 825, 833– 34 (1994) (citations omitted).  "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id* at 837.  *See also Rich v. Bruce*, 129 F. 3d 336, 339– 40 (4th Cir. 1997).

Sewell claims that steel shanks were being passed among inmates for purposes of harming him with the tacit authorization of Lt. Harbaugh, Sgt. McAlpine, and Sgt. Smith.  ECF

No. 19 at p. 1. In response, Harbaugh states under oath that he has "never tacitly or explicitly authorized or permitted the passing of steel shanks among inmates for any purpose." ECF No. 24 at Ex. 2. McAlpine and Smith also state under oath that no such activity was ever tacitly authorized by them. Sewell offers no objective evidence that this activity took place other than his belief that it did. He does not claim he was threatened or that he was told by anyone that there was a plan to assault him. Thus, there does not appear to be a basis for injunctive relief regarding an alleged threat to Sewell's life, nor does there appear to be a genuine dispute of material fact warranting a trial on this claim. Defendants are entitled to summary judgment on this claim.

Access to Psychological Care

In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

There is no underlying distinction between the right to medical care for physical ills and its psychological and psychiatric counterpart. *Bowring v. Goodwin*, 551 F.2d 44, 47 (4th Cir. 1977). A prisoner is entitled to such treatment if a "[p]hysician or other health care provider, exercising ordinary skill and care at the time of the observation, concludes with reasonable certainty (1) that the prisoner's symptoms evidence a serious disease or injury; (2) that such disease or injury is curable or may be substantially alleviated; and (3) that the potential for harm

to the prisoner by reason of delay or the denial of care would be substantial." *Id.* The *Bowring* Court further concluded that the aforementioned right to such treatment is based upon the essential test of medical necessity and not upon that care considered merely desirable. *Id.* at 48.

Sewell claims his psychiatric condition requires his transfer and evaluation at Patuxent Institution. ECF No. 15, Attachment 1, p. 4. His claim, however, represents his disagreement with the screening process for such an assignment. Dr. James Holwager, who is the director of Mental Health Services, evaluated Sewell and concluded that his transfer to Patuxent would be highly inappropriate. ECF No. 24 at Ex. 25. While Sewell claims that he suffers from "organic brain disorder" and "manic depression with bipolar tendencies," he has not displayed symptoms consistent with either of those disorders. *Id.* at p. 2. Holwager's review of Sewell's medical and psychological records established that he suffers from mild depression and mild anxiety, neither of which becomes acute even when Sewell refuses medication. *Id.* In Dr. Holwager's opinion Sewell has "an exaggerated sense of entitlement" which causes him to become irate when a treatment provider questions the accuracy of Sewell's opinions that he should be released from lock up or that he is not treated well. *Id.* at p. 1; *see also* p. 12 (argumentative with psychologist upon suggestion disciplinary segregation is in response to his behavior). The program at Patuxent is reserved for "patients who are severely afflicted with much more serious psychological disorders than evidenced by Inmate Sewell." *Id.* at p. 2. Recently, Sewell's history has been to refuse the psychological treatment provided at NBCI, meaning even if a transfer to Patuxent for treatment was clinically warranted, it would be of little to no value given his lack of cooperation. *Id.*; *see also* p. 6 (demanding not to be called out by psychologist), p. 10 (refusing pass to psychologist), and p. 11 (same). Sewell's disagreement with the denial of his request to be transferred to Patuxent for treatment is not a basis for an Eighth Amendment claim,

7

nor is it a basis for injunctive relief. Defendants are entitled to summary judgment in their favor on this claim.

## Mail and Access to Courts

Prisoners have a First Amendment right to send and receive mail. *See Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989). In considering whether policies regarding mail are constitutionally valid, a distinction is drawn between incoming and outgoing mail; a lower level of scrutiny applies to policies regarding incoming mail. *Id.* at 413. Prohibition of incoming materials from publishers (*see Thornburgh* at 408) requires the showing of a greater, legitimate security interest than policies concerning other types of mail. *See Altizer v. Deeds*, 191 F. 3d 540, 548 (4th Cir. 1999) (inspection of outgoing mail serves legitimate penologicial purpose). Likewise, policies concerning legal mail require heightened scrutiny, but isolated incidents of mishandling of mail do not state a claim. *See Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir.1990) (requiring a showing of improper motive or interference with access to courts); *Buie v. Jones* 717 F. 2d 925, 926 (4th Cir. 1983) (isolated incident of mishandling does not show actionable pattern or practice).

Prisoners have a constitutionally protected right of access to the courts. *Bounds v. Smith*, 430 U. S. 817, 821 (1977). However:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U. S. 343, 355 (1996).

"Ultimately, a prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show 'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.' *O'Dell v. Netherland*, 112 F. 3d 773, 776 (4th Cir. 1997) *quoting Lewis*, 518 U.S. at 355. "The requirement that an inmate alleging a violation of *Bounds* must show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches." *Lewis v. Casey*, 518 U.S. 343, 349 (1996).

With respect to Sewell's claim regarding his legal mail, Sewell's assumption that his mail was misdirected or deliberately withheld because he did not receive an Order from this court granting him injunctive relief is simply incorrect. *See* ECF No. 31. In his Response in Opposition dated January 19, 2012, Sewell claims he had not received any "legal mailings" related to Civil Action DKC-11-614. ECF No. 28 at p. 2. A review of the docket entries in Civil Action DKC-11-0614 belies his assertion. On December 19, 2011, this court issued an Order denying Sewell's Motion for Appointment of Counsel and on January 9, 2012, Sewell filed a Motion for Clarification which references the court's December 19, 2011 Order. *Sewell v. Stouffer*, Civil Action DKC-11-614 at ECF No. 69 and 70 (D. Md.). Additionally, Sewell has managed to timely file a Motion to Alter or Amend in that case. *Id.* at ECF No. 77. Where there is no actual injury established, there is no unconstitutional burden on the right of access to courts. Sewell's claims are, again, based on his beliefs that officers are misdirecting his mail. ECF No. 28. His assurances that there is "evidence" to support his assertions do nothing to establish an actual injury emanating from the alleged wrongful conduct.

The same analysis applies to Sewell's claims that he is improperly denied access to the library and to legal materials. ECF No. 2. Sewell's claim that his "referral ARP" filed with the

Assistant Commissioner Paul O'Flaherty was dismissed because he did not receive "case law and updated law changes" for a "liberal pleading concerning the SMU operations disciplinary procedures," is based on his assertions that library services were only provided every two to three weeks; his request slips were being rewritten in someone else's handwriting; and the librarian faxed the wrong information to LASI.  ECF No. 2 at p. 3.  The claim does not indicate that Sewell's dismissed ARP concerned a protected liberty interest or an otherwise valid constitutional claim concerning the conditions of his confinement.  Rather, he simply alleges the ARP concerned policies, but does not explain how those policies directly impacted his rights.  Thus, he has failed to establish that his inability to access these materials has resulted in a lost opportunity to present a valid claim regarding his conviction or the conditions of his confinement.  Indeed, it is clear to the court that Sewell has been more than capable of preparing and filing legal documents, many of which evidence legal research, in a timely manner.  Defendants are entitled to summary judgment on this claim.

## Conclusion

Review of the record evidence establishes that Defendants are entitled to summary judgment on all claims raised by Sewell and that there is no basis for the injunctive relief sought.  A separate Order follows.

Date:  April 2, 2012                           /s/
                                        DEBORAH K. CHASANOW
                                        United States District Judge